UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                                    CASE NO. 8:21-cr-00142-CEH-SPF

CHARLES CURRIE

**UNITED STATES' SENTENCING MEMORANDUM**

The United States files this sentencing memorandum to request that this Court sentence the defendant to a guideline sentence of 165 months imprisonment, with a lifetime of supervised release. The guideline range is 151 to 188 months' imprisonment. In support thereof, the United States submits as follows:

## I. Background

On May 10, 2022, a grand jury returned a three-count Superseding Indictment that charged the defendant, Charles Currie, with two counts of receipt of child pornography and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (a)(4)(B). Doc. 58. On August 19, 2022, the defendant pleaded guilty to Count One, receipt of child pornography, and Count Three, possession of child pornography, of the Superseding Indictment. Doc. 81. The Court has scheduled sentencing to take place November 22, 2022. Doc. 88.

## II. Presentence Investigation Report

On October 18, 2022, U.S. Probation issued its Initial Presentence Investigation Report ("PSR"). Doc. 90. It determined the defendant's applicable guidelines range for the underlying offenses as 151 to 188 months, based on an adjusted total offense

level of 34 and a criminal history category I. *Id.* at 44. Count One has a five-year mandatory minimum term of imprisonment and the applicable period of supervised release as to both Counts One and Three, is five years to life. *Id.* at 73; 76. For the reasons that follow, this Court should adopt the PSR's facts and guideline calculation. The defendant's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands a guidelines sentence because of the volume of child pornography possessed by the defendant, his distribution of the child pornography, and the heinousness of the content. He poses an extraordinary danger to children in the community and that danger is unlikely to abate over time.

### III. Argument for a Guideline Sentence

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United Sates*, 522 U.S. 38, 41 (2007). Although a sentencing court may not presume that a guideline-range sentence is reasonable, the Sentencing Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect

the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The defendant's conduct, considered in conjunction with the sentencing factors set forth, calls for a guide-line sentence.

### A. Nature and Circumstances of the Offense

This case stemmed from an undercover operation conducted by Homeland Security Investigations (HSI) Fort Lauderdale, related to the BitTorrent peer-to-peer network. On September 5, 2020, the undercover computer at HSI Fort Lauderdale, utilized Torrential Downpour, a law enforcement tool, to download files depicting the sexual abuse of children, from a user of a single Internet Protocol (IP) address over the BitTorrent peer-to-peer network. This led law enforcement to execute a search warrant at the defendant's residence on January 26, 2021, and federal agents seized multiple electronic devices.

Federal agents searched the electronic devices recovered from the defendant's residence and discovered images and videos of minors engaged in sexual acts, including minors under the age of 12, toddlers, infants, and images and videos depicting bondage. PSR ¶ 15. The images and videos of child pornography retrieved by law enforcement were sent to the National Center for Missing and Exploited Children (NCMEC). NCMEC identified 7,066 pornographic images and 1,821 videos

of known child victims from 513 known child pornography series. The images and videos of the victims identified by NCMEC originated from a variety of domestic and foreign locations outside the state of Florida.

The defendant achieved this massive collection of child sexual abuse images and videos through various peer-to-peer programs, including Bearshare, Newsbot, Quadnews and BitTorrent. PSR ¶ 23. The defendant allowed others in these peer-to-peer networks to access his child pornography collection as he received child pornography. *Id*. For example, in February 2016, on his Dell Desktop computer, through the peer-to-peer networking application Bearshare, the defendant received a video that was approximately six minutes and twenty-nine seconds long, depicting the sexual abuse of a prepubescent male between the ages of three and seven. PSR ¶ 16. The defendant also possessed hundreds of CDs and DVDs, which were encrypted, and contained hundreds of images and videos of children being sexually abused; the defendant received these images and videos on his various computers and transferred them to encrypted CDs/DVDs as part of his collection. *Id*. at 22.

The nature and circumstances of these offenses are abhorrent. The seriousness and duration of the defendant's offense conduct demonstrate the necessity of a guidelines sentence. The defendant did not suffer from a solitary lapse in judgment. His conduct was calculated and premeditated. Although this Court must consider other factors beyond the defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g.*, *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to

any specific § 3553(a) factor is committed to the sound discretion of the district court."). Possession of child pornography is not a victimless crime. Each child depicted in those videos and images are a victim – a victim who has to live with the sexual abuse they endured that was documented and put on the internet to live in perpetuity. This defendant shared those images and videos of sexual abuse through peer-to-peer programs. The Government would direct the Court to review the victim impact statements provided to Probation in order to observe the ways in which this defendant's actions has impacted and will continue to impact the lives of the victims.

### B. History and characteristics of the defendant

The defendant's history and characteristics also weigh strongly in favor of a guidelines sentence and do not support any downward variance. The defendant described his childhood as "pretty normal." PSR ¶ 54. The defendant was raised by his parents, alongside his brother. *Id.* at 53-54. He married, had two children, and maintained steady employment, including working for Hillsborough County school district. *Id.* at 55. The defendant also earned multiple diplomas in the field of electronic technology. He has no serious mental health or substance abuse problems. *Id.* at 59-60. In short, there is nothing in the defendant's history or upbringing to explain these charges other than his interest in pedophilia.

### C. Seriousness of the crime and impact on the victims

It is axiomatic that hands-on sexual abuse inflicts upon its victim enormous, devastating, and long-lasting harm. That the abuse is inflicted on a child adds a

devastating dimension to the harm ordinarily inflicted on rape victims. As the Supreme Court explained while addressing an Eighth Amendment challenge to capital punishment for the rape of a child by her stepfather in *Kennedy v. Louisiana*:

> […] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood…. Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

554 U.S. at 435 (citing various studies). Those years of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide. *Id.* at 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting). Sexually exploited children also struggle to develop healthy affectionate relationships, suffer from sexual dysfunctions, and tend to become sexual abusers themselves. *See New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982) (citation omitted). And this is to say nothing of the serious and sometimes long-lasting physical injuries that hands-on sex abuse can inflict on a child victim, such as internal lacerations, scarring, ovary damage, and encopresis. *See Irey*, 612 F.3d at 1207 (collecting cases).

  The defendant's graphic child pornography collection revictimized countless other children. He consumed media depicting child sex abuse with no regard to the broken lives depicted in the images and videos that he so willingly shared and helped create. As the Supreme Court has recognized, "[t]he distribution of photographs and

films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children …. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation..." *Ferber*, 458 U.S. at 758–59 nn. 9–10 (citations omitted). A guidelines sentence is necessary to recognize the victims harmed by the defendant's conduct and to restore public confidence in our laws protecting children.

### D. Promoting respect for the law

This Court's sentence must reflect the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43. Indeed, child sexual abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 ((Alito J., joined by

Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (quoting C. Bagley & K. King, Child Sexual Abuse: The Search for Healing 2 (1990)). The defendant's actions violated federal law, but they also transgressed accepted social norms that undergird our laws. His conduct was unnatural, morally repugnant, and incompatible with a well-ordered society. This Court's sentence must express an appropriate level of social condemnation of his crime.

### E. The need for a just punishment

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *U.S. v. Irey,* 612 F.3d 1160, 1206 (11th Cir. 2010): "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d at 1206. Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). In the same vein, Congress has expounded that the "just deserts" concept in sentencing is a means of reflecting the "gravity of the defendant's conduct," as well as the "harm done or threatened by the offense." S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59. "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *U.S. v. Sarras*, 575 F.3d 119, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as

8

substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a guidelines sentence.

### F. Adequate deterrence and the need to protect the public

Deterrence is especially important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.

The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). Charles Currie fits well-within that class. As this Circuit recognized in *Irey*, research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." 612 F.3d at 1214 (citing various studies and reports); *see also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

This Court should also impose a guidelines sentence to send a strong warning to other individuals currently involved in or considering similar conduct. *See Irey, 612*

*F.3d at 120*8 ("There is another aspect of the compounding harm that the production and distribution of child pornography inflicts. It may incite or encourage others to sexually abuse children."). A guidelines sentence in light of the nature of certain videos the defendant downloaded, the number and length of videos downloaded, that he had been downloading child pornography for years and transferring his collection to encrypted CDs/DVDs, and that he engaged in the exchange of child pornography over various peer-to-peer networks.

Courts have recognized receipt and possession of child pornography are harmful crimes warranting harsh sentencings. *United States v. Lichtman*, 683 Fed. Appx. 873 (11th Cir. 2017) (Upholding a 151-month sentence); *United States v. Wayerski*, 624 F.3d 1342, 1354-55 (11th Cir. 2010) (holding it was not unreasonable for the district court to consider the defendants' child pornography offenses to be serious and deserving a significant sentence). The Court is *Wayerski* also noted that "[t]hose who receive and exchange child pornography create a demand that influences the production of child pornography and the attendant physical and emotional injury to children." *Id*. at 1354.

### G. The Court should discount the defense policy arguments about U.S.S.G. § 2G2.2

The defense asks the Court to give little deference to the advisory sentencing guidelines that apply to this case. As an initial matter, the government's sentencing position, as outlined above, is based on the factors enumerated in 18 U.S.C. § 3553(a), which amply support a long sentence for the defendant. The defense cites to a report

issued by the Sentencing Commission evaluating the child pornography guidelines (the "2012 Report."). *See* U.S. Sent'g Comm'n, *Report to the Congress: Federal Child Pornography Offenses* (2012). Doc. 92, pg. 17. Although this report criticized certain aspects of the Guidelines for child pornography possession, distribution, and receipt offenses, it did not recommend that courts cease to apply them and confirmed the extreme and multiple harms that result from these crimes. It describes what those in the criminal justice system have long known: child pornography has a highly destructive and life-long impact on its victims. *See* 2012 Report at 311-12. Child pornography undermines all of society because the effects of this abuse extend to those who are close to the victim, including parents, partners, spouses, friends, and siblings, and because it destroys the fabric of a community when rape, violence, and exploitation of children are normalized. The report also pointed out that more accurate indicators of culpability and dangerousness remain unaccounted for. *The 2012 report* at 320. The Commission noted that an updated analysis of the size and content of child-pornography collectors may be a distinguishing factor. In this case, the defendant met that criterion as he had an extensive collection, including 7,066 identified images and 1,821 identified videos, from 513 different identified series by NCMEC. He gathered that extensive collection through use of peer-to-peer communities. He educated himself on learning about technology, as demonstrated by his various degrees. He also took a job in a school system (as a custodian), but which placed him in proximity to children.

Furthermore, the Eleventh Circuit has previously rejected attacks on the Sentencing Guidelines premised on the 2012 Report. See, *United States v. Lichtman*, 683 Fed.Appx. 873 (11th Cir. 2017); *United States v. Cubero*, 754 F.3d 888, 900 (11th Cir. 2014) (holding that the report "does not change the statutory sentencing scheme, the applicable sentencing guidelines, or the binding precedent about § 2G2.2 in this Circuit."); see also, *United States v. Carpenter*, 803 F.3d 1224, 1235-36 (11th Cir. 2015) (Challenges to the validity of the Guidelines based on the Report are a "non-starter."). The 2012 Report "does not limit the district court's discretion in determining what weight to assign each § 3553(a) factor, nor does it require the district court to vary from § 2G2.2's guideline range." *Lichtman*, 683 Fed.Appx. at 877. The Court rejected the claim that our treatment of the Report created unwarranted sentencing disparities. *Id*. citing *Carpenter*, 803 F.3d at 1235-36.

**IV.    Conclusion**

  This Court should sentence Charles Currie to a guidelines sentence of imprisonment. Nothing in the offense conduct or the defendant's history and characteristics warrants a downward departure or variance. A guidelines sentence is the only reasonable sentence because it is the only sentence that reflects the seriousness of the defendant's crimes and relevant conduct, provides just punishment, fully protects children in the community, and promotes respect for the law.

         Respectfully submitted,

         ROGER B. HANDBERG
         United States Attorney

        By: */s/ Ilyssa M. Spergel*
        Ilyssa M. Spergel
        Assistant United States Attorney
        Florida Bar No. 0102856
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602
        Telephone:   (813) 274-6300
        Facsimile:    (813) 274-6178
        E-mail: ilyssa.spergel@usdoj.gov

U.S. v. CURRIE                                        Case No. 8:21-cr-00142-CEH-SPF

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

                                                  */s/ Ilyssa M. Spergel*
                                                  Ilyssa M. Spergel
                                                  Assistant United States Attorney
                                                  Florida Bar No.
                                                  400 N. Tampa Street, Ste. 3200
                                                  Tampa, FL 33602
                                                  Phone: (813) 274-6000
                                                  Fax: (813) 274-6103
                                                  Email: ilyssa.spergel@usdoj.gov